## NEWTON P. HOLDEN
### v.
## CHARLES ·C. P. HOLDEN ET AL.

*Equity Jurisdiction—Real Property—Bill to Quiet Title—Possession—
Contract of Sale—Whether a Mortgage—Default—Demurrer to Bill—Mo-
tion—Prayer—Wrong Relief—General Relief.*

1.   The general rule that a court of equity has no jurisdiction to quiet
title or remove a cloud upon the title to real estate unless the complainant
is in possession, or the land is improved or unoccupied, has certain excep-
tions.

2.   Where the facts stated in the bill show that the legal title claimed by
the complainant is not disputed by the defendant in possession, but that such
defendant sets up some equity, not affecting the legal right of possession,
which operates as a cloud on the legal title and prevents a sale of the prop-
erty, equity has jurisdiction, there being no adequate remedy at law.

3.   A court of equity has jurisdiction where the defendant is in possession
of real estate and in default under a contract for purchase.

4.   Under the general prayer for relief a court of equity may grant the
relief appropriate to the facts, although the bill was framed with a view to
getting a different relief.

5.   Where there is a prayer for general relief, it is improper to grant a
motion, which is in effect a demurrer to the bill, on the ground that the
complainant has prayed for wrong relief.

[Opinion filed December 7, 1887.]

APPEAL from the Superior Court of Cook County; the Hon.
HENRY M. SHEPARD, Judge, presiding.

Appellant filed this bill in chancery in the Superior Court
of Cook County, as follows:

Complainant, Newton P. Holden, of Frankfort, Will County,
Illinois, represents,

That on or about March 1, 1881, complainant became the
owner in fee simple of the premises in question by virtue of
the warranty deed, dated March 1, 1881, from Eliza W. Roach
to Newton P. Holden.   Consideration, $5,500.   Conveying
the property in dispute in this case.   Acknowledged March
1, 1881.   Recorded April 13, 1881, book 1074, page 132.

Holden v. Holden.

That said premises consisted, at the date of said conveyance, and still consist, of a lot of land and a brick dwelling house and frame barn, and was in the occupancy of the defendant Holden.

That an agreement in writing was entered into, by and between complainant and defendant Holden, at or about the time of said conveyance, which is as follows:

"This agreement, made the first day of March, A. D. 1881, between Newton P. Holden, of Frankfort Station, Illinois, party of the first part, and Charles C. P. Holden, of Chicago, Illinois, party of the second part, witnesseth as follows:

"Whereas, Newton P. Holden, party of the first part, is the owner in fee of the premises known as No. 20 Aberdeen St., being the S. 20 ft. of lot 32 in blk. 1 of the C. T. sub. div. of blk. 1, W. ½ and W. ½ of N. E. ¼, Sec. 17, T. 39, R. 14, E. of the 3rd P. M., in the City of Chicago; and whereas Charles C. P. Holden, party of the second part, is now occupying and residing in said premises.

"Now, therefore, Newton P. Holden, party of the first part, in consideration of the covenants and agreements made by the party of the second part, and hereinafter mentioned, agrees:

"1st. Not to disturb said party of the second part in his possession of said premises for the space of three years from March 1st, A. D. 1881, provided always that the covenants and agreements made by the party of the second part, which are a part of this contract, are kept good.

"2d. Said party of the first part agrees that if, during the term of this contract, said party of the second part does not default in any of the covenants herein made by him, said party of the second part, or his assigns, can, at any time during the said three years, have the privilege of purchasing said premises from the party of the first part, upon the payment to him of five thousand five hundred dollars ($5,500); and said party of the first part agrees to hold said premises three years from March 1st, 1881, provided there is no default in the covenants made herein by the party of the second part.

"C. C. P. Holden, party of the second part, in consideration of the occupancy of the aforesaid premises, and the right to

purchase the same within three years from March 1st, A. D. 1881, subject to the following conditions, covenants and agrees:

"1st. To pay said Newton P. Holden, party of the first part, interest on five thousand five hundred dollars ($5,500), at the rate of seven per cent. per annum, payable semi-annually, at the end of each and every six months, from March 1st, A. D. 1881.

"2d. He, said C. C. P. Holden, party of the second part, further agrees to keep said premises, No. 20 Aberdeen Street, in good repair and insured for at least $3,000 during his possession of the same.

"3d. Said party of the second part further covenants and agrees to pay all taxes on said premises as the same shall become due, including water taxes.

"4th. It is understood and agreed by said C. C. P. Holden, party of the second part, that if default shall be made in any of the covenants and agreements by him above made, then this contract shall become null and void, but not otherwise.

"NEWTON P. HOLDEN, [SEAL.]
"CHARLES C. P. HOLDEN. [SEAL.]

" Witnessed by
"WRIGHT HOLDEN."

That said agreement was written in duplicate, one copy being delivered to each of the parties, they having signed the same in execution.

That defendant Holden neglected and failed to keep and perform the covenants and agreements of said agreement, and made default therein as follows:

Said defendant Holden has not paid or caused to be paid to complainant the sum of $5,500 mentioned in said agreement, nor any part thereof.

Said defendant Holden has not paid or caused to be paid to complainant the interest on the same, mentioned in said agreement, nor any other part thereof than the amount which accrued and became due for the two years expiring March 1, 1883.

Said defendant Holden has not kept said premises in good repair—on information and belief.

Said defendant Holden has not kept said premises, nor any part thereof, insured for at least $3,000; but complainant is informed and believes that said defendant has kept said premises, that is, the improvements thereof, insured in his own name, and with the loss made payable to complainant as a mortgagee.    Complainant is informed and believes that such insurance is no sufficient indemnity, because the policies provide that the title of the party insured, if not the absolute fee, should be stated in such policies, or they should be void; and such policies contained no explanation of the condition of such title, but were issued as though the fee simple title was in defendant Holden, and not in complainant, and as though complainant, instead of being the owner in fee, subject to said agreement, was simply the owner of a mortgage thereon. Complainant declined to receive such policies under said agreement, and they are in the possession or control of the defendant Holden.    That the last of the policies was issued in November, 1884, and on inquiry complainant was informed that up to March 23, 1885, the premiums for such policies had not been paid.    By a clause in the policies, such state of facts rendered them not valid.

That defendant Holden has not paid all taxes on said premises as the same became due, including water taxes.    Complainant is informed and believes that said premises, or some part thereof, have been sold for unpaid taxes thereon, which should have been paid by defendant Holden.

· That complainant has fully performed the agreement on his part, and has suffered defendant Holden to remain in possession of said premises until the demand and institution of the proceedings for the possession thereof hereinafter mentioned.

That complainant was able and willing to sell the premises to the defendant Holden according to the terms of the agreement, during the three years from March 1, 1881, notwithstanding the default aforesaid; but the defendant Holden was either unable or unwilling to buy the same and make payment therefor during said three years, according to the terms of said agreement, and requested that the complainant delay insisting upon the purchase or possession at the expiration of the three

years. That on or about March 1, 1884, complainant demanded of said defendant that he comply with the terms of said agreement or surrender the possession to complainant, whereupon defendant Holden asked a delay until May 1, 1884, and complainant did delay in the enforcement of such demand until May 1, 1884. On or about said last named day defendant Holden requested further delay, and from time to time has requested delay after delay, until the matter became unpleasant to both complainant and defendant Holden—to complainant, because his property was fast being used up by defendant Holden, and to defendant Holden, because he either would not or could not do his duty in the premises—until, on March 6, 1885, defendant Holden verbally abused complainant, and refused to talk with him concerning the property; and then complainant caused demand for possession to be served upon defendant Holden.

That according to information furnished to complainant by defendant Holden, defendant Holden owns the furniture in said premises, and during all the time since the making of said agreement, he has rented said house and furniture, and has received as rent thereof his own board, and until recently, the board of his adopted daughter, and in addition the rent of $50 per month.

That if defendant Holden had applied such rent in making the payments required by such contract, no such state of affairs would exist as is now the result from defaults of said defendant.

Complainant charges that if the representations of defendant Holden as to the revenue derived from the property are true, he has acted wrongfully and in bad faith in making default in the payment of taxes and interest.

Complainant avers that said premises are now occupied by defendant Hiltabidel and defendant Holden under some arrangement, the terms of which are unknown to complainant, but by virtue of which defendant Hiltabidel pays to defendant Holden a rental of $50 per month, besides his board. That defendant Holden is not pecuniarily responsible, and has no means out of which his liability for the use and occupation of said premises

Holden v. Holden.

can be realized. That complainant is entitled to the possession. That defendant Holden caused his duplicate of said agreement to be recorded on or about April 13, 1881, and the same is and constitutes a cloud upon complainant's title to the premises. That defendant Holden claims and asserts that he is owner of said premises, and that complainant is simply a mortgagee, which claim, complainant avers, is untrue and unfounded; but such claim, connected with said recorded agreement, constitute such a cloud upon and embarrassment to complainant's title, that complainant is thereby greatly damaged in his ownership of said property, and in justice and equity is entitled to the possession, and to be freed from the cloud.

That on March 7, 1885, complainant caused to be served on defendant Holden a demand in writing for the possession of said premises to which said defendant replied in a contemptible and ungentlemanly manner; and on March 9, 1885, complainant caused to be filed with Daniel Scully, a Justice of the Peace, a complaint in forcible detainer against defendant Holden, for the possession of said premises; that summons was issue 1 and served, and cause came on for trial March 18, 1885. Defendant Holden was present, but declined to appear and defend. Cause was continued to March 19, 1885, at which time, and in the presence of defendant Holden, judgment was rendered in complainant's favor, and against defendant Holden, for the restitution of the premises and costs. That March 23, 1885, defendant Holden filed with the said Justice an appeal bond in $400, and an appeal was perfected to the Circuit Court of Cook County. That the Circuit Court is so crowded with business that said cause can not be reached for trial for one or more years.

That said appeal is no adequate security. One of the sureties is G. M. Sayer, who, as complainant is informed, is a clerk in a wholesale store in the City of Chicago, and who recently married the adopted daughter of defendant Holden. Complainant is informed and believes that it was not claimed at the time of giving the bond that Sayer was sufficient. The other of the sureties is John Rosenberg, who purports to set forth his pecuniary responsibility and his qualifications as such

surety in an affidavit on the back of the bond, in which he states that he is the owner of four lots in Ira Brown's sub-division, in said Cook County, and that they are incumbered not more than $25.

That as a result of inquiries set on foot by complainant, it is apparent that the title of Rosenberg is not good as a basis of security. That said lots are from one to two miles southwest of Desplaines Station, in a locality where land is worth, as complainant is informed and believes, not to exceed $75 per acre. That said lots are of such size that the twenty acres sub-divided are divided into 200 lots, besides streets and alleys. That said four lots are less than one-half acre in area. That Rosenberg's title, as appears by the records, is subject to two trust deed liens. The first is recorded in book 912, page 240, and secures $800 and interest at eight per cent. from April 1, 1879. The principal matured April 1, 1882. Said trust deed conveys all of block 2, consisting of fifty lots, and contains a clause stating that said lots may be released upon the payment of $19 and interest per lot, which makes, without interest, $76 on said four lots. The other of said deeds is recorded in book 912, page 524, and secures $673 and interest at eight per cent., which sum is long past due. This conveys ten lots in said block 2; and if the debt should be apportioned equally, the same is a lien upon said four lots of $269.20, besides interest.

That the records show another incumbrance purporting to be a mortgage on lot 5, in said block 2, recorded June 6, 1884, from Michael J. Howard, a former owner of said lots, to Christoph Wilberheit; but complainant believes that the same was filed for record after Howard had parted with his title.

That complainant has caused diligent inquiry to be made concerning said lots, and is fully convinced that there is no security in the title which Rosenberg appears to have.

That at the time aforesaid, when complainant acquired the title aforesaid, there was in the possession of the grantor of complainant an abstract of title to said premises, which abstract is part and parcel of the property, and which was held and owned by the grantor with the property. That said abstract

is of particular value in connection with the ownership of the property, because of the destruction of the records of Cook County, October 9, 1871, and said abstract shows the title to such property as it existed prior to such destruction. That said abstract was delivered to complainant with said deed to him, and thereafter was in the custody, for complainant, of complainant's son, Wright Holden, now deceased. That defendant Holden procured said abstract from said Wright Holden, and now refuses to deliver the same to complainant, saying it is locked up in his safe and is going to stay there.

That said property is not worth to exceed $7,000, and in the event that complainant should be deemed and taken to be simply a mortgagee thereof, the said value is not sufficient to pay the said sum of $5,500 and the interest thereon at seven per cent. from March 1, 1883, and the amount necessary to free the property from liens for taxes which defendant Holden has not paid, and the usual expenses of a sale.

That actual loss will result to the complainant in any event, if defendants are allowed to remain in possession without making payment to complainant, or to a receiver, of a fair equivalent for the use and occupation.

Complainant is informed and believes that said premises are worth, as a fair rental, $50 per month.

Complainant charges that defendant Holden ought to be restrained, by the order and injunction of this court, from collecting or receiving any money or rent for the use and occupation of said premises, or any part thereof, and from using and occupying the same without paying to complainant, or a receiver, such sum of money monthly as may be a fair sum for such use and occupation.

Complainant charges that said Anna Hiltabidel ought to be restrained from making payment of any money or rent for the use and occupation of said premises to any other person than the complainant, or a receiver, and from making any payment to defendant Holden, in respect to such use and occupation.

Prayer for answer, not under oath; that said agreement may be set aside and declared void; that complainant's title may be declared to be free and clear from any right, title or interest

of the said C. C. P. Holden, and may be decreed to be free and clear of any cloud, claim or demand under and by virtue of said agreement; that the said duplicate thereof in the possession of defendant Holden may be delivered up to be canceled; that complainant may be put in possession of said premises; that defendant Holden may be decreed to pay to complainant what may be found due to complainant from defendant Holden for his use and occupation of said premises; that defendant Holden may be ordered and decreed to deliver the said abstract of title to complainant, or to a receiver; that defendant Holden may be restrained, by order and injunction of this court, from collecting or receiving any money or rent for the use and occupation of said premises, or any part thereof, and from using or occupying the same without paying to complainant or to a receiver, such sum of money, monthly, as may be a fair sum for such use and occupation, to be fixed by the court; that said Anna Hiltabidel may be restrained from making payment of any money or rent for the use and occupation of said premises, or any part thereof, to any other person than complainant or a receiver, and from making any payment to said C. C. P. Holden in respect to such use and occupation; that a receiver may be appointed with authority to take charge of the premises, to rent the same, and collect and receive rent, revenue and income thereof, and to disburse the same under the order and direction of this court, and with authority to keep the buildings insured in his own name as receiver, or otherwise, as may be right and proper, and with authority to free said property from tax liens, under the direction of the court, and to pay such taxes as may be due and unpaid, or as may hereafter become due, and with authority to take and receive said abstract of title, and hold the same subject to the order of this court, and for general relief.

To this bill appellee Holden filed an answer, claiming that the contract set out was in fact a mortgage, and averring that the court had no jurisdiction for the reason that it does not appear by the bill that complainant is in possession of the premises; but it appears from said bill that defendant is in possession, and occupying the same as his home, and claimed

the same benefit as if the bill were demurred to. When the case was reached for hearing, a motion was made to dismiss the bill for want of jurisdiction, and the court sustained the motion and dismissed the bill at complainant's costs, and such order is assigned for error on this appeal.

Messrs. HOLDEN & FARSON, for appellant.

The quieting and confirming of the title to real estate is peculiarly a matter of equitable cognizance. Buckmaster v. Ryder, 12 Ill. 207, 214; Martin v. Dryden, 1 Gilm. 187, 210; Kennedy v. Northup, 15 Ill. 148, 154; Frazier v. Miller, 16 Ill. 48; Morris v. Thomas, 17 Ill. 112; Larmon v. Jordan, 56 Ill. 204.

In examining these cases it must be borne in mind that statutory changes have taken place from time to time, and also that the case at bar is not one of conflicting, independent legal titles.

Where the relief in chancery is more complete and effectual, it is sustained, even though there is a remedy at law. Shays v. Norton, 48 Ill. 100, 105; Morris v. Thomas, 17 Ill. 112; Frazier v. Miller, 16 Ill. 48; Martin v. Dryden, 1 Gilm. 187.

Where there is any ground for equitable relief, jurisdiction will be entertained, even though the main questions could be settled at law. Booth v. Wiley, 102 Ill. 84, 114; Mitchell v. Shortt, 113 Ill. 251; McDowell v. McDowell, 114 Ill. 255.

With the statute and these authorities in view, we claim there is ample jurisdiction, and that the decree of the court below should be reversed. Since the enactment of this statute the complainant is not required to be in possession of the land. Whitney v. Stevens, 97 Ill. 482, 488.

Messrs. CHARLES F. WHITE and M. L. WHEELER, for appellees.

The principal purpose of the bill filed in this case, and the principal matters in respect to which relief was prayed, are matters not cognizable in a court of equity. In the bill are embraced an action for rent, a suit for possession and an action

for the recovery of an abstract; and there can be no doubt that the real purpose of complainant is to obtain, through the aid of a court of equity, possession of the premises in question, and that the matter in reference to the alleged cloud upon the title is merely thrown in to give the court apparent jurisdiction.

For the purpose of obtaining possession a suit had already been instituted before a Justice of the Peace, and a judgment rendered in favor of complainant, which was and is still pending on appeal in the Circuit Court; so that in this respect, the court of chancery was called upon to hear and determine a matter of which it not only had no jurisdiction from its very nature, but which was already in process of adjustment through the pendency of another suit in a court of law.

A complainant, out of possession of premises of which he is the legal owner, can not maintain a bill in chancery against one in possession simply and solely to remove a cloud upon the title.

" There are only two cases under our law in which a party may file a bill to quiet title, or to remove a cloud from the title to real property. First, when he is in possession of the lands; and second, when he claims to be the owner, and the lands in controversy are unimproved and unoccupied; then under the statute he may file such a bill." See also, Oakley v. Hurlbut, 100 Ill. 204; Gage v. Griffin, 103 Ill. 41; Gage v. Parker, 103 Ill. 528; Gould v. Sternberg, 105 Ill. 488; Whitney v. Stevens, 97 Ill. 482, 488; Mitchell v. Shortt, 113 Ill. 251.

MORAN, P. J. The question is whether, under the facts stated in the bill, a case is made for equitable cognizance. It is contended that a court of equity has no jurisdiction to quiet title or remove a cloud upon the title to real estate, unless the complainant is in possession, or the land is unimproved or unoccupied. Such is no doubt the general rule, but there are well recognized exceptions.

Where a complainant is seeking to remove a cloud which is in the nature of a legal title, which is being or may be asserted

Holden v. Holden.

adversely to the title which he desires to protect, then he must show that he is in possession and therefore can not bring ejectment, or must allege and prove that the real estate whose title is clouded, is vacant or unimproved and unoccupied land.  But when the facts stated in the bill show that the legal title claimed by the complainant is not disputed by the defendant in possession, but that such defendant sets up some equity not affecting the legal right of possession, but which operates as a cloud on the legal title and prevents a sale of the property, or renders the title unmarketable, then equity has jurisdiction, because an action at law would not afford an adequate remedy, and in such case the possession by the defendant, in subordination to complainant's legal title, will not defeat the jurisdiction.

Taking the facts as alleged in the bill as true, it is very plain that complainant could maintain forcible detainer or ejectment upon the contract, and that defendant could not set up in such suit at law in bar of plaintiff's right of possession, that the contract in fact constituted a mortgage.  But a judgment at law would not silence defendant's claim that the contract was but a security for money and that he had a right of redemption, and thus after a successful action at law defendant's claim of an equitable right in the land would be as complete a cloud upon complainant's title as it is now with defendant in possession.

The chancery court has jurisdiction in such a case under the ancient head of equity, that the action at law furnished no adequate remedy, and such jurisdiction has been sustained by the Supreme Court in a case not distinguishable in principle from this case.  Shays v. Norton, 48 Ill. 100.

And in cases where there is fraud as a ground of equitable jurisdiction, and removing the fraudulent instrument as a cloud is incidental to the general relief, even though the fraudulent title is in its nature a legal title, and the holder of such title is in possession, a court of chancery will have jurisdiction to remove the cloud.  Booth v. Wiley, 102 Ill. 84.

It is well settled that when equity has jurisdiction for one purpose, it will go on and do complete justice between the

parties, and will not send them to a court of law because part of the relief may be purely legal relief. So here the court would be authorized to put complainant in possession if upon a hearing he maintained the allegation of his bill as to the nature of the contract. Green v. Spring, 43 Ill. 280.

But there is also another ground of plain chancery jurisdiction. The contract set out is claimed by complainant in his bill to be, and on its face is, a contract for the sale of real estate, and defendant is shown to be in possession under the contract, and to be in default.

In such case the vendor may go in the first instance into a court of equity, and call on the purchaser to come forward and pay the money due, or be forever thereafter foreclosed from setting up any claim against the land; and under some circumstances such is his only safe remedy. Hansbrough v. Peck, 5 Wall. 497; Derickson v. Chicago South Branch Dock Co., 18 Ill. App. 531.

It is true complainant has specially prayed for entirely different relief, but it is for the court to determine from the material allegations of the bill and the proofs on the hearing, what relief he is entitled to, and to decree him the appropriate relief and thus terminate the suit, unless, to avoid taking the relief which he is found by the court to be entitled to, he voluntarily dismisses his bill.

There was in this bill the prayer for general relief, as follows: "That your orator may have such other and further relief in the premises as equity may require, and this court may deem just." Under this general prayer the court could grant the relief appropriate to the facts, although the bill was not framed with a view to getting such relief. If the facts stated entitled the complainant to a certain relief, it matters not that such statement of facts may have been made with the purpose and belief, on the part of the solicitor who drafted the bill, that the relief sought might flow from a different source of equitable jurisdiction. McNairy v. Eastland, 10 Yerg. 309; Vansant v. Allmon, 23 Ill. 30.

The dismissing of the bill in this case on motion was, in effect, sustaining a demurrer to the bill, and a demurrer can

not be sustained on the ground that a party has prayed for the wrong relief where there is also a prayer for general relief, because at the hearing the complainant may ask at the bar for the proper specific relief. Wilkinson v. Beal, 4 Mod. 408; Hopkins v. Snedaker, 71 Ill. 449; Curyea v. Berry, 84 Ill. 600; Stanley v. Valentine, 79 Ill. 544; Wescott v. Wicks, 72 Ill. 524; Crane v. Hutchinson, 3 Ill. App. 30.

There was error, therefore, in dismissing the bill on the motion of the defendant for want of equity, or for want of jurisdiction, and the decree must therefore be reversed and the case remanded.

*Reversed and remanded.*